## COMMONWEALTH *v.* WESLEY FLAVEL.

[Charged on information on oath, of the deputy Attorney-General of Philadelphia county, with having violated certain conditions of a pardon, granted to him by his excellency the governor of the commonwealth.]

ON the 29th of August, 1845, the RECORDER gave the following opinion:

Wesley Flavel was arrested on the 25th of this month, on a warrant issued by me, on an information of the Attorney-General, sworn to and subscribed before me on the 23d day of August, instant, as follows:

"And now this 23d day of August, A. D. 1845, before the honourable Richard Vaux, Recorder of the city of Philadelphia, came Francis Wharton, esquire, assistant Attorney-General for the city and county of Philadelphia, and being duly sworn according to law, doth depose, that one Wesley Flavel, late of the said county, on the 26th day of November, A. D. 1844, was convicted in the court of oyer and terminer and quarter sessions of the peace in and for the said city and county, of murder in the second degree, and on the 28th day of December, A. D. 1844, was sentenced by the said court to imprisonment at hard labour in the Eastern Penitentiary for the period of twelve years, and subsequently, to wit, on the 7th day of February, A. D. 1845, was discharged by the supreme court of the commonwealth of Pennsylvania, on a writ of habeas corpus, it appearing

14

that a pardon had been granted by the governor of the said commonwealth, to the said Wesley Flavel, on condition that he, the said Wesley Flavel, should leave the said commonwealth, and forever thereafter remain away therefrom. And the said Francis Wharton, assistant Attorney-General, &c., doth farther say that he is informed, and verily believes that the said Wesley Flavel is still within the said commonwealth, to wit, in the city and county of Philadelphia.

" [Signed] FRANCIS WHARTON,
"*Assistant Attorney-General.*

" Sworn and subscribed before me, this 23d day of August, A. D. 1845.

" RICHARD VAUX, *Recorder.*"

On the day of the arrest of Flavel, *assistant Attorney-General Kelley* appeared for the commonwealth, and *J. Abrams, esq.*, for the prisoner. He was committed to prison until the 28th, for a hearing. On the 28th of August, he appeared, when Mr. Kelley produced the record of his sentence; the original pardon of the governor; and the writ of habeas corpus and his discharge recorded thereon by J. S. Cohen, prothonotary of the supreme court of Pennsylvania; and Mr. Kelley farther proved by George Hoffner, the officer who arrested Flavel, that he was in the city and county of Philadelphia. Whereupon the Attorney-General asked that Wesley Flavel be committed again to the state penitentiary.

*J. Randall, esq.*, for the prisoner, proved by John Mills and Samuel M'Kahin, that they had both seen Flavel in Ireland, and that his reason was fully restored, and that he was now in sound mind since his pardon

and discharge; and he contended that Flavel had therefore complied with the conditions of his pardon, and was entitled to his discharge.

The learned counsel remarked that they would be satisfied with the decision I should give, without an argument on either side, on the questions involved in the case.

As they are important, I have given them careful examination.

By the constitution of the state of Pennsylvania, the chief executive authority is vested in the governor; art. 11, sect. 1.

Art. 11, sect. 10, gives the governor the right and invests him with the power, to grant reprieves and pardons, and remit fines and forfeitures, except in cases of impeachment.

The power to grant pardons is thus given to the governor, who, as the representative of the whole people, acts as their agent in the premises. The granting a pardon to a citizen convicted and sentenced for a felony or misdemeanor, which offence was committed against the laws of the state, made by the representatives of the people; or against the common law, which is adopted by them, and is of as much validity as statute law; is nothing more nor less than a *forgiveness* by the governor for the people, of the offence which one of them has committed against the laws of the whole. It is an attribute of all governments, and has a high example in God's government of mankind.

The power to pardon is a grant of express power by the constitution, which is the fundamental law of the state. A reprieve is only a suspension of punishment.

There are no implied powers incident to an express grant of constitutional power. The pardoning power is express; to grant pardons, to grant reprieves, to remit fines and forfeitures, except in cases of impeachment. The governor has certain implied powers, but they arise of necessity, from powers granted, which are neither enlarged nor restricted thereby; his other powers are positive. The veto power is an express grant—there can be no conditional veto. A bill after it has passed both branches of the legislature, must be subjected to the approval or disapproval of the chief executive authority; if the governor approves, he signs it; if he disapproves, he returns it with his objections. His power over the bill is confined to his approval or disapproval.

The pardoning power is analogous to the veto power in this view. The governor can grant a pardon or refuse. A pardon once granted, is final and full, whatsoever conditions may be annexed to it. If a conditional pardon should be granted to a prisoner, one immediate effect is to liberate from prison, and then the conditions attached to the liberation arise, if it is a condition subsequent. If it is a condition precedent, it is no pardon—fort there is no liberation of the prisoner—and the first effect of a pardon is freedom from the custody of the law. In cases of conditions subsequent, the liberation having been effected, the forgiveness is complete; and that being effected, the prisoner stands in the same relation to society as though he was never tried and convicted and sentenced; and as that is his condition, there is no power to restrain him, or detain him, or compel him to comply with any of the conditions, for the conditions are nugatory and of no effect.

Art. 2, sect. 14 of the constitution, requires the governor "to take care that the laws be faithfully executed." The express power here given, was also an implied power incident to it—and that incidental or implied power, covers the necessary or legal means to carry out the power given, and the positive duty enjoined.

Whatever may have been the powers granted by charter to the original government of Pennsylvania under Penn and his successors, the constitutions of 1776, 1790, and that of 1838, which constitutions being in effect an original or new compact or organic law, have recognised none of those proprietary or charter powers, which are not specially and positively granted in those instruments.

The charter of Penn gave him, his heirs and deputies, &c. the pardoning power, before and after conviction, of all offences but treason and murder, and also to grant reprieves in these last mentioned cases till the pleasure of the king could be known. In the constitution of 1776, the legislature was substituted for the crown. In 1780, power was given by an act passed 8th of March, to the executive council, to grant conditional pardons—which conditions, if violated, the pardon should be void.

In 1790, the constitution then formed, makes no limitation or condition to the pardoning power; by the constitution then formed, and the one made in 1838, the grant of power to pardon, and reprieve, and remit fines and forfeitures, &c., is the same.

There can be no common law interpretation of an organic law, whereby to enlarge or limit the specific

14*

powers vested by that organic law, else we would have
a written and an unwritten constitution, a positive and
an implied grant of rights and powers.   This is not in
accordance with the nature and spirit, of such an or-
ganic law, as a state constitution or the constitution of the
United States.   If the convention which made the last
constitution in 1838, had desired to give the executive
the right to grant *conditional* pardons, it would have
been so expressed in the instrument itself.   In that
convention it was proposed to give the executive the
power to commute punishment—but the proposition
was unfavourably received.   If the governor had the
power to grant conditional pardons, what necessity was
there to introduce this proposition.   A conditional
pardon is or may be a commutation in effect; for ex-
ample—if a prisoner tried and convicted and sentenced
to be hung for the crime of murder in the first degree,
should be pardoned, on condition that he remained,
during the term of his natural life, in the penitentiary,
would that not in effect be a commutation of capital
punishment to imprisonment for life?

And again, if the governor had pardoned Wesley
Flavel on condition that he should leave the state and
country, and go to Ireland, and forever thereafter re-
mained from the said state and country, would not
such a pardon be a commutation of imprisonment for
twelve years, for exile?   There is no power express, or
implied, in our constitution or laws, to exile a citizen.

Let us take another example.   Suppose A. B. was
tried, convicted, and sentenced for the larceny of $1000
to four years imprisonment, and the governor should
pardon him, on condition that he served the person

from whom the property was taken, till his labour should repay the money stolen, would not such condition be a commutation of imprisonment for involuntary servitude? Or, if a Jew, a Catholic, or a Quaker were convicted and sentenced for murder, and was pardoned on condition that he renounced his religion, and entered the naval service of the United States for life, would not such a pardon be a commutation of imprisonment for this punishment? Or, if a man was convicted of larceny and sentenced, and pardoned on condition that he be branded, would not such a pardon be a commutation of imprisonment for a cruel punishment?

The constitution forbids cruel punishments—and if the condition be complied with, it is by reason of the consent of the prisoner, and not by authority of law; and thus, the governor, who by art. 11, sect. 13, is bound "to take care that the laws be faithfully executed," would be commuting punishment, which he has no express power to do, on conditions that the constitution be violated, by consent of the parties. There is a view in connexion with this part of the subject, that is worth considering. The consent to conditions, either precedent or subsequent, must be given while the prisoner is in confinement; such consent is thus given "in duress." By the principles of the law, a man cannot make a contract, sign a bond, and the like, which will be binding on him, if it be done "in duress." How much less could there be a binding condition made like that referred to, under such a legal restraint, which is the most positive kind of "duress"—would such consent be binding?

It appears to be law, therefore, that where an express grant of power is made in a written constitution or organic law, there can exist in connexion therewith no implied unwritten or common law power, the effect of which would be either to alter, change, limit, or enlarge the positive and clear grant of express powers. Nevertheless the common law may explain or define powers granted by organic law. The case is different as to a statute law. There are cases, and it is a doctrine of the law too, that the principles of the common law may come in, and assist or explain a statute. The common law may also be invoked to define legal terms and the like, where, without it, or some explanation, it would be less likely to be understood. But there is a distinction between these cases, and a reliance on the common law to give additional power, or construe and enlarge or limit an express grant of constitutional power. The distinction in other words is this—the common law may explain and define, but it cannot limit or enlarge an express grant of constitutional power. From the fact that under the original charter, and under the different constitutions of Pennsylvania, the pardoning power has been both enlarged and restricted, it seems to be deducible, that there could be no other authority intended to be given, than was expressed, and the idea of implied powers does not in any one instance seem to have been entertained.

It appears to me clear, that the governor has no direct authority to grant a conditional pardon, and having no such authority, the conditions annexed to a pardon are null and void, and the pardon, stripped of such worthless conditions, is full and complete.

Judge Banks, president judge of the court of common pleas of Berks county, in the case of the Commonwealth *v.* Hatsfield (Law Journal, vol. 2), holds similar opinions. In that case the prisoner was convicted of murder in the second degree; he was pardoned on condition, and he left the state forever; he returned and was arrested, and the judge discharged him, stating that the pardon was full, and the conditions nugatory.

There was one other case of a like character in Pennsylvania, where the prisoner was convicted of horse stealing, pardoned on conditions, failed to comply with the conditions, and was discharged—the judge deciding the pardon to be good, and the conditions of no effect. This case was never reported.

Judge Sergeant, whose profound learning and distinguished position as a jurist, entitle his opinion to respect, on discharging Flavel on habeas corpus, said that "in cases of a condition subsequent, such as this before us, the pardon becomes null, and if the condition is not performed, the original sentence remains in full vigour, and may be carried into full effect."

The supreme court have never yet decided the question; it is therefore, although an important, yet an unsettled one.

But leaving the question of conditional pardons, this case can be decided on other and independent grounds. Flavel was pardoned, and the operative and important words of the pardon are as follows. After reciting the conviction and sentence, it continues, "and whereas it is made manifest to me that the said Wesley Flavel was deprived of his reason at the time, and wholly unconscious of having committed the act, and his friends

offering to take him home to Ireland immediately, there to remain until his reason shall have been fully restored: I do therefore, in consideration of the premises, hereby pardon the said Wesley Flavel, on the express condition that he be taken direct from the penitentiary on board the vessel, which is to convey him out of the country, there to remain until the vessel put to sea, and he is hereby fully pardoned accordingly."

By this instrument he is "fully pardoned," "on the express condition" that he be taken from the penitentiary and put on board the vessel, and there remain till the vessel put to sea.

Now, by the terms of the pardon, the moment the vessel put to sea, Wesley Flavel was fully pardoned, and might have returned before he reached Ireland if his reason was restored. The condition was expressed, the only condition annexed to the pardon—and with that condition, Wesley Flavel has fully and entirely complied. He went to Ireland, and there remained— he has returned, and those who know him, say on oath that his reason is restored and he is of sound mind, and he is fairly and legally entitled to his liberty. If the doctrine of conditional pardons is sound, and the conditions have any legal existence or validity, then the condition in this case has been carried into effect—and so also was the consideration on which the condition in the pardon was grounded. I can see no legal cause to detain Wesley Flavel in custody. *He is therefore discharged.*

*Kelley*, for commonwealth.
*Randall*, for defendant.